PEARSON, J.

# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF OHIO
# EASTERN DIVISION

| | |
|---|---|
| JOSEPH ROBINSON, ) | |
| ) | CASE NO. 4:18CV1817 |
| Plaintiff, ) | |
| ) | |
| v. ) | JUDGE BENITA Y. PEARSON |
| ) | |
| UNITED STATES OF AMERICA, *et al.*, ) | |
| ) | **MEMORANDUM OF OPINION** |
| Defendants. ) | **AND ORDER** |

*Pro se* Plaintiff Joseph Robinson filed this *Bivens* action against the United States of America, former Elkton Federal Correctional Institution ("FCI Elkton") Warden Steven Merlak, the Estate of former FCI Elkton Corrections Officer Jonathan Traylor, FCI Elkton Captain John Doe, FCI Lieutenant John Doe, FCI Elkton Nurse Rineheart, and FCI Elkton Dr. Dunlop. ECF No. 1. Plaintiff also includes claims under the Federal Tort Claims Act, codified at 28 U.S.C. § 2671 *et seq.* ("FTCA"). *Id.* In his Complaint, Plaintiff alleges Traylor assaulted him and the other Defendants did not adequately protect him or provide medical treatment. He seeks monetary relief.

For the following reasons, the Court dismisses Plaintiff's *Bivens* claims for retaliation and due process and his Eighth Amendment claims against Merlak, Captain John Doe, Lieutenant John Doe, Nurse Rineheart, and Dr. Dunlop. Plaintiff's claims under the FTCA

(4:18CV1817)

are dismissed against all Defendants. Remaining is Plaintiff's claim for excessive force against Traylor or his Estate.

**I. Background**

Plaintiff avers he was physically assaulted by Traylor at 11:40 p.m. on June 8, 2017. ECF No. 1 at PageID #: 4. He alleges Traylor came by his cubicle and attempted to provoke an altercation. *Id.* He states that, when Traylor was unable to provoke Plaintiff to initiate physical aggression, Traylor left the cubicle and ordered Plaintiff to follow him into the bathroom. *Id.* Plaintiff complied. *Id.* Plaintiff alleges Traylor took off his radio and attacked Plaintiff, pushing him against the wall and striking him in the mouth. *Id.* Plaintiff contends Traylor also struck him hard in the chest, causing Plaintiff's heart to go into an irregular rhythm. *Id.* at PageID #: 5. Plaintiff asserts he pushed Traylor back. *Id.* Traylor lost his balance and fell, striking his head on a stool. *Id.* Plaintiff claims he attempted to leave the bathroom, but Traylor stood up and attacked him again. *Id.* Traylor tackled him, pinning him to the floor. *Id.* Plaintiff pushed Traylor off of him. *Id.* Plaintiff alleges Traylor grabbed Plaintiff's genitals and twisted them to bring Plaintiff back to the floor. *Id.* Plaintiff alleges Traylor did not release his genitals, so Plaintiff placed Traylor in a choke hold until Traylor released him. *Id.*

When the physical altercation ended, Traylor ordered Plaintiff to come to his office. *Id.* at PageID #: 6. Plaintiff refused, stating he required medical attention. *Id.* He avers his heart was racing and had an irregular beat. *Id.* at PageID #: 5-6. Traylor eventually called Lieutenant Doe. *Id.* at PageID #: 6. Plaintiff indicates he lost consciousness as he attempted

2

(4:18CV1817)

to follow Doe to his office. *Id.* Upon regaining consciousness, Plaintiff claims he was taken into a room in which the Officers photographed his injuries. *Id.* Plaintiff noticed he was bleeding from his genitals. *Id.* An ambulance was summoned. *Id.* Plaintiff avers he noticed his heart rate was close to 200 beats per minute on the heart monitor in the ambulance. *Id.* Plaintiff remained in the hospital for five days. *Id.*

Plaintiff asserts he was placed in the Special Housing Unit ("SHU") for five months upon his return to FCI Elkton. *Id.* at PageID #: 7. He alleges he learned Traylor had committed suicide. *Id.* Plaintiff was charged with assaulting an officer. *Id.* Plaintiff contends he was denied due process and was the victim of retaliation. *Id.* He also contends Merlak, Captain Doe and Lieutenant Doe failed to protect him in violation of the Eighth Amendment when they knew or should have known that Traylor had a history of inappropriate interactions with inmates. *Id.* at PageID #: 7-8. Finally, Plaintiff asserts tort claims of negligent failure to protect and negligent hiring and supervision. *Id.* at PageID #: 8.

## II. Standard for Dismissal

*Pro se* pleadings are liberally construed by the Court. *Boag v. MacDougall*, 454 U.S. 364, 365 (1982) (per curiam); *Haines v. Kerner*, 404 U.S. 519, 520 (1972). Nonetheless, the district court is required to dismiss an *in forma pauperis* action under 28 U.S.C. §1915(e) if it fails to state a claim upon which relief can be granted, or if it lacks an arguable basis in law or fact. *Neitzke v. Williams*, 490 U.S. 319 (1989); *Lawler v. Marshall*, 898 F.2d 1196 (6th Cir. 1990); *Sistrunk v. City of Strongsville*, 99 F.3d 194, 197 (6th Cir. 1996). An action has no arguable basis in law when a defendant is immune from suit or when a plaintiff claims a

3

violation of a legal interest which clearly does not exist. *Neitzke*, 490 U.S. at 327. An action has no arguable factual basis when the allegations are delusional or rise to the level of the irrational or "wholly incredible." *Denton v. Hernandez*, 504 U.S. 25, 32 (1992); *Lawler*, 898 F.2d at 1199.

When determining whether the Plaintiff has stated a claim upon which relief can be granted, the Court must construe the Complaint in the light most favorable to the Plaintiff, accept all factual allegations as true, and determine whether the Complaint contains "enough fact to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). The Plaintiff's obligation to provide the grounds for relief "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Id.* Although a Complaint need not contain detailed factual allegations, its "factual allegations must be enough to raise a right to relief above the speculative level on the assumption that all the allegations in the Complaint are true." *Id.* The Court is "not bound to accept as true a legal conclusion couched as a factual allegation." *Papasan v. Allain*, 478 U.S. 265, 286 (1986). The Supreme Court in *Ashcroft v. Iqbal*, 556 U.S. 662, 677-78 (2009), further explains the "plausibility" requirement, stating that "a claim has facial plausibility when the Plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. Furthermore, "the plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant acted unlawfully." *Id.* This determination is a

(4:18CV1817)

"context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.*

### III. Law and Analysis

#### A. *Bivens* Claims

Before proceeding to the merits of this claim, the Court must decide whether *Bivens* provides Plaintiff with a cognizable cause of action in this context. In *Bivens*, the United States Supreme Court recognized an implied damages action to compensate persons injured by federal officers who violated the Fourth Amendment's prohibition against unreasonable searches and seizures. *Bivens v. Six Unknown Named Agents of Fed. Bureau of Narcotics,* 403 U.S. 388, 397 (1971). The Supreme Court has since allowed *Bivens* remedies in only two other contexts: (1) in a Fifth Amendment gender-discrimination case, *Davis v. Passman,* 442 U.S. 228 (1979); and (2) in an Eighth Amendment Cruel and Unusual Punishments Clause case, *Carlson v. Green,* 446 U.S. 14 (1980). The Supreme Court has not approved of an implied damages remedy under the Constitution itself. *Ziglar v. Abbasi*, 137 S. Ct. 1843, 1855 (2017).

The Supreme Court recently clarified in *Ziglar* that federal courts should refrain from extending *Bivens* outside of the three specific contexts in which it has already been applied, absent the presence of special factors. *Id.* at 1860. Congress provides a specific damages remedy for plaintiffs whose constitutional rights were violated by state officials through 42 U.S.C. § 1983. *Id.* at 1854. Congress did not provide a corresponding remedy for constitutional violations by federal officials. *Id.* The Supreme Court explained the decision to

5

(4:18CV1817)

limit the implied damages remedy, stating that *Bivens*, *Davis*, and *Carlson* were decided at a time when the prevailing law assumed that a proper function of the courts was to "provide such remedies as are necessary to make effective" a statute's purpose. *Id.* at 1855 (quoting *J.I. Case Co. v. Borak*, 377 U.S. 426, 433 (1964)). The Court has since adopted a far more cautious approach, looking instead to statutory intent to determine whether Congress intended to create a private right of action under those circumstances. *Id.* at 1855-56 (citing *Alexander v. Sandoval*, 532 U.S. 275, 286 (2001); *Touche Ross & Co. v. Redington*, 442 U.S. 560, 568 (1979)). "Similar caution must be exercised with respect to damages actions implied to enforce the Constitution itself." *Id*. at 1848. While *Bivens* is still well-settled law in its own context, expanding *Bivens* to new contexts is now "disfavored." *Ashcroft v. Iqbal*, 556 U.S. 662, 675 (2009).

Therefore, when a plaintiff seeks to assert an implied cause of action under the Constitution, "separation-of-powers principles should be central to the analysis." *Ziglar*, 137 S. Ct. at 1857. Specifically, Courts should ask whether Congress or the judiciary should decide when to authorize a damages suit. *Id.* (citing *Bush v. Lucas*, 462 U.S. 367, 380 (1983)). The Supreme Court states that most often, this question will be answered in favor of Congress, because the Legislature is in a better position to determine if the public interest will be better served by creating a "new substantive legal liability." *Id.* *Bivens* will not be extended to a new context if there are "'special factors counseling hesitation in the absence of affirmative action by Congress.'" *Id.* (quoting *Carlson*, 446 U.S. at 18). If there are sound reasons to think Congress might doubt the efficacy or necessity of a damages remedy as part

6

(4:18CV1817)

of the system for enforcing the law and correcting a wrong, courts must refrain from creating that kind of remedy. *Id.* at 1858. Furthermore, if there is an alternative remedial structure in place to address a given situation, the Court should not infer a new *Bivens* cause of action. *Id.*

Plaintiff seeks to assert Eighth Amendment, retaliation, and due process claims against Defendants. While *Carlson* recognizes *Bivens* claims arising out of a violation of a prisoner's Eighth Amendment rights, Plaintiff's retaliation and due process claims are not recognized under *Bivens*. *See Ziglar*, 137 S. Ct. at 1860. Nor are there any reasons to infer a new *Bivens* cause of action for these claims. Accordingly, the Court will not extend a damages remedy under *Bivens* for Plaintiff's retaliation and due process claims.

Furthermore, Plaintiff's Eighth Amendment claims against Merlak, Captain Doe, and Lieutenant Doe are based on a theory of *respondeat superior* liability. In order to state a claim under *Bivens*, a plaintiff must allege that the individual defendant was personally involved in the alleged deprivation of the Plaintiff's constitutional rights. *See Nwaebo v. Hawk-Sawyer*, 83 F. App'x 85, 86 (6th Cir. 2003) (citing *Rizzo v. Goode*, 423 U.S. 362, 373-77 (1976); *Hall v. United States*, 704 F.2d 246, 251 (6th Cir.1983)); *Kesterson v. Fed. Bureau of Prisons*, 60 F. App'x 591, 592 (6th Cir. 2003); *see also Steele v. Fed. Bureau of Prisons*, 355 F.3d 1204, 1214 (10th Cir.2003) (to be subject to *Bivens* liability, a Defendant must have had "direct, personal participation" in the constitutional violation). Plaintiff alleges these Defendants knew or should have known Traylor was capable of violence. Plaintiff does not, however,

7

(4:18CV1817)

allege facts suggesting these Defendants were personally involved in the alleged assault. His allegations against these Defendants are insufficient.

Similarly, Plaintiff includes Dr. Dunlop and Nurse Rineheart as Defendants, but fails to make any factual allegations pertaining to them in the Complaint. Instead, Plaintiff states, without explanation, that he was denied medical treatment. ECF No. 1 at PageID #: 6. He admits an ambulance was summoned for him, and he spent five days in the hospital following the incident. Id. Plaintiff's factual allegations are therefore insufficient to state a claim for denial of medical care.

**B. Claims Under the FTCA**

The Westfall Act immunizes federal employees from liability for torts they commit when acting within the scope of their federal employment. 28 U.S.C. § 2679(b)(1). When a federal employee acts within the scope of her employment and commits a tort, any relief for that tort must be sought against the Government under the FTCA. The United States, as a sovereign, is immune from suit unless it explicitly waives its immunity. United States v. Sherwood, 312 U.S. 584, 590-91 (1941). The FTCA provides the exclusive jurisdictional basis for tort claims against the United States and its employees for actions committed in the cope of their employment. 28 U.S.C. § 2679(b)(1). By enacting the FTCA, Congress waived the United States' sovereign immunity under very limited circumstances for claims against the federal government arising from torts committed by federal employees who are acting within the scope of their employment. 28 U.S.C. §§ 1346(b)(1), 2679(d)(1); United States v. Orleans, 425 U.S. 807, 813-14 (1976). Congress defined the exact terms and conditions upon

8

(4:18CV1817)

which the government may be sued, and the terms of the United States' consent define the parameters of federal court jurisdiction to entertain suits brought against the United States. *Orleans*, 425 U.S. at 814; *Honda v. Clark*, 386 U.S. 484, 501 (1967).

The parameters placed on these tort claims dictate that they "shall forever be barred unless . . . presented in writing to the appropriate Federal agency within two years after such claim accrues." 28 U.S.C. § 2401(b). The timely filing of an administrative claim is a requirement of the FTCA. *Dolan v. U.S.*, 514 F.3d 587, 593 (6th Cir. 2008). If the administrative requirements of the FTCA have not been fulfilled, the case must be dismissed. *Id.* A court cannot extend the waiver of immunity beyond what Congress intended. *United States v. Kubrick*, 444 U.S. 111, 117-18 (1979). Section 2401(b) is a condition of the United States' waiver of immunity that must be interpreted solely by reference to federal law. Plaintiff has given no indication that he has exhausted his administrative remedies prior to filing this action. Consequently, his claims under the FTCA are premature and must be dismissed.

### IV. Conclusion

Accordingly, Plaintiff's *Bivens* claims for retaliation and due process and his Eighth Amendment claims against Merlak, Captain John Doe, Lieutenant John Doe, Nurse Rineheart, and Dr. Dunlop are dismissed. 28 U.S.C. § 1915(e). His claims under the FTCA are dismissed against all Defendants. *Id.* The Court certifies, pursuant to 28 U.S.C. § 1915(a)(3), that an appeal from this decision could not be taken in good faith. This action shall proceed solely against Traylor or his Estate on Plaintiff's excessive force claim.

9

(4:18CV1817)

Plaintiff has not provided U.S. Marshal forms or summonses to serve this Defendant. Without these documents, the Clerk's Office cannot forward this matter to the U.S. Marshal for service. Accordingly, Plaintiff is ordered to provide U.S. Marshal forms and summonses for the Defendant and any other party requiring service of process of the Complaint pursuant to [Fed. R. Civ. P. 4(i)](Fed. R. Civ. P. 4(i)) within thirty (30) days of this order. Plaintiff is further ordered to send a "Notice of Compliance," with an appropriate case caption for filing, with the completed forms. The Clerk's Office is directed to mail sufficient marshal forms and summonses to Plaintiff with a copy of this

order. Plaintiff is notified that failure to supply the marshal forms and summonses within thirty

(30) may result in dismissal of this action without further notice.

IT IS SO ORDERED.

| | |
|---|---|
| March 19, 2019 | */s/ Benita Y. Pearson* |
| Date | Benita Y. Pearson |
| | United States District Judge |